UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00056-GNS-HBB

REBECCA LOPEZ, as administratrix of
the estate of Carl J. Smith, deceased                                                PLAINTIFF

v.

HART COUNTY, KENTUCKY, et al.                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions for Summary Judgment (DN 41, 42, 43). The motions have been fully briefed by the parties and are ripe for adjudication. For the reasons outlined below, the motions are **GRANTED**.

### I. STATEMENT OF FACTS AND CLAIMS[1]

On July 9, 2015, Carl J. Smith ("Smith") was booked at the Hart County Jail on charges of driving while under the influence, and fleeing and evading police after an automobile accident on July 7, 2015. (Compl. ¶ 24, DN 1). During the intake process, Smith was administered a set of standard medical questions by Monica Arnett ("Arnett") to identify any serious health or mental issues that needed to be addressed by the jail. (Compl. ¶ 25; Bergenson Dep. 15:5-16, 17:6-15,

---

[1] The parties cite extensively to the Complaint in their briefing of the pending motions. While a verified complaint is entitled to the same weight as an affidavit for summary judgment purposes, the Complaint in this action is not verified and contains nothing more than allegations. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *see also Nece v. Quicken Loans, Inc.*, 292 F. Supp. 3d 1274, 1280 (M.D. Fla. 2018) ("[A]n unverified complaint is not evidence and cannot contribute to the resolution of a motion for summary judgment." (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968))). Nevertheless, because the parties do not appear to dispute many of the allegations in the Complaint and have not cited other evidence in the record, the Court will consider the cited allegations as stipulations by the parties.

Sept. 6, 2017, DN 41-3). Smith disclosed an attempted suicide in 2009, which did not fall within the five-year lookback period covered in the questionnaire. (Bergenson Dep. 18:14-20). Smith disclosed a closed-head injury in 2014 and that he was a "slow learner" which could have affected his ability to understand the instructions of jail personnel. (Compl. ¶ 26). Because Smith's reported suicide attempt was more than five years old, he was placed with the jail's general population. (Compl. ¶ 26; Bergenson Dep. 18:14-22).

On July 16, 2015, Smith had a verbal altercation with another inmate. Surveillance footage from the incident captured Smith banging his own head against a metal table. (Compl. ¶ 29; Bergenson Dep. 20:9-19). According to Jailer Israel Bergenson ("Bergenson"), Smith "slammed his head against the table once, just to act like he was a bully, how big and bad he was." (Bergenson Dep. 20:9-14). Following the incident, jail personnel placed Smith in administrative segregation ("isolation") for ten days as a disciplinary measure. (Compl. ¶¶ 30-31, Bergenson Dep. 26:19-25, 27:8-15; Mabe Dep. 27:2-20, Sept. 6, 2017, DN 42-3). According to the Hart County Jail Policies and Procedures, deputies are required to perform hourly safety checks on the jail's general population and every twenty minutes for prisoners in isolation. (Pl.'s Resp. Mots. Summ. J Ex. 1, DN 46-1). Testimony indicated, however, that deputies routinely performed twenty-minute checks only for inmates on suicide watch, but that other inmates in isolation were checked on the same hourly schedule as the general population. (Bergenson Dep. 28:23-30:1, 54:24; Mabe Dep. 20:2-25).

From 7:00 p.m. July 17, 2015, to 7:00 a.m. July 18, 2015, Deputy Jailer Arnold Mabe ("Mabe") was the floor deputy responsible for the safety checks of the isolation section. (Compl. ¶ 33; Bergenson Dep. 56:18-57:24). On a normal shift, floor deputies perform cell checks, book inmates, do laundry, complete inmate request forms for books or other items, and perform various

other duties. (Mabe Dep. 10:20-11:7, 14:2-15:13). During this shift, sometime between 12:10 a.m. and 2:40 a.m., Mabe discovered Smith's body hanging lifelessly from a bedsheet attached to the cell's air conditioning vent. (Compl. ¶¶ 11-12, 32, 34, 36; Mabe Dep. 7:6-8, 36:24-37:13). According to the daily log, the isolation safety checks were not completed during that shift on a regular twenty-minute basis. (Pl.'s Resp. Mots. Summ. J. Ex. 6, DN 46-6). From 8:30 a.m. on July 17, 2015, until Smith's body was found, he was checked roughly 15 times, but was not checked in the 2½ hours immediately preceding the discovery of Smith's suicide. (Compl. ¶¶ 11, 32-33).

Following the incident, Bergenson conducted an investigation of the safety check logs and the jail's video surveillance footage and discovered "a problem with people not checking on inmates [in isolation] every twenty minutes." (Bergenson Dep. 42:11-16, 58:20-59:10). Instead of conducting these safety checks, Bergenson testified that Mabe was simply "[h]anging around the booking desk." (Bergenson Dep. 57:25-58:13). Mabe claims that he received a call about an inmate being transported for booking and was thus required to remain at the booking desk while the inmate was brought in. (Mabe Ans. Interrog. 13, DN 42-2). During the time in question, Thompson, who was assigned to another area of the jail, had come over to the isolation area and allegedly helped Mabe conduct the last entries in the nightly log, which was a common occurrence. (Bergenson Dep. 56:18-57:19).

With regard to conducting safety checks on prisoners in isolation, Mabe stated that those inmates were not considered "special inmates" unless they were on suicide watch, that inmates in isolation were checked on the same hourly basis as the rest of the jail, and that no one in a supervisory role had ever told him that inmates in isolation should be checked every twenty minutes. (Mabe Dep. 13:14-23, 20:14-19, 22:11-24:8, 33:15-34:7). Thompson agreed that he was

3

never trained or told to check on inmates in isolation on twenty-minute intervals. (Thompson Dep. 14:18-15:8, Sept. 6, 2017, DN 46-4). Conversely, Bergenson testified that jail deputies were all given copies of the policies and procedures, they signed paperwork indicating their understanding of the policies, and jail staff were consistently reminded to follow the jail's policies, including the twenty-minute checks on inmates in isolation. (Bergenson Dep. 40:12-17, 41:6-25). Bergenson stated that supervisors do not regularly review the handwritten logs to check the frequency of the safety checks performed by the jail deputies, but that the logs are reviewed occasionally. (Bergenson Dep. 53:2-54:16). Thompson, however, testified that he was not aware of any system in place to check the daily logs for compliance, and never himself checked another deputy's log entries. (Thompson Dep. 15:9-20, 41:11-17).

Plaintiff filed this case on April 22, 2016, alleging three separate 42 U.S.C. §§ 1983 and 1988 claims under the Fourteenth Amendment as well as state law tort actions for negligence *per se*, gross negligence *per se*, negligence, gross negligence, and three theories of vicarious liability. Besides naming Hart County, Kentucky, as a defendant, Plaintiff asserted claims against, *inter alia*, Bergenson, Mabe, and Thompson in both their individual and official capacities.[2]

## II. JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because a federal question is presented and has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims arise from the same case or controversy.

---

[2] In the Complaint, Plaintiff also asserted claims against Arnett, Angela Ballard, RT Logsdon, James Gossett, and D. Roten, but those claims have been dismissed by agreement of the parties. (Agreed Order, DN 38).

## III.     STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV.     DISCUSSION

### A.     Section 1983 and 1988 Claim Against Hart County for Municipal Liability

Defendant Hart County seeks summary judgment on Plaintiff's Section 1983 and 1988 claims for municipal liability. (Defs.' Mem. Supp. Mot. Summ. J. 16-22, DN 41-1 [hereinafter Bergenson & Hart Cty. Mot.]). In Plaintiff's response to the pending motions, Plaintiff voluntarily

dismissed, *inter alia*, Counts I and II in which she asserted claims against various individual Defendants in both their individual and official capacities, and Counts I through III as to Bergenson. (Pl.'s Resp. Mots. Summ. J. 7, DN 46). Accordingly, the Court will grant summary judgment on those claims for the respective Defendants.

Because Plaintiff has dismissed those claims, Hart County contends that it cannot be liable. (Defs.' Reply Mot. Summ. J. 2, DN 49). As the Sixth Court has held, "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Because other courts have nevertheless still considered the merits of such a claim, the Court will do so, and as outlined below, Count III still fails. *See Crocker v. Cty. of Macomb*, 119 F. App'x 718, 724 (6th Cir. 2005); *see also Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005) ("It is arguable . . . that the District Court erred in its conclusion that '[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.' Assuming for the sake of argument that this Circuit permits a municipality to be held liable in the absence of any employee's committing a constitutional violation, the remaining question for us then is whether the City's policy makers' decisions regarding suicide prevention were themselves constitutional violations, as plaintiff contends.").

To establish liability under Section 1983, a plaintiff must prove that a policy or custom of the municipality caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury that the government as an entity is responsible under § 1983."). In this case, Plaintiff has alleged:

> Defendant HART COUNTY is the municipality for which the above referenced individual Defendants work, and HART COUNTY exhibited deliberate indifference to SMITH's 14th Amendment rights when it allowed a custom or practice with the force of law to develop that allowed civil rights violations to occur and had actual or constructive knowledge of same, and/or exhibited deliberate indifference when they failed to train, supervise, and/or discipline the individual defendants despite the obvious need to train, supervise and/or discipline them and/or is liable as the official final policymaker, BERGENSON participated in, acquiesced to, and/or allowed the above mentioned constitutional violations to occur.

(Compl. ¶ 67). Thus, Plaintiff has asserted claims relating to training, supervision, and discipline.[3] As the Sixth Circuit has explained:

> To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.

*Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)).

While not fully articulated in Plaintiff's response, she appears to challenge how Smith's serious medical needs were handled by the jail, which the Court will construe as applying to the initial screening of Smith during the intake process. In addition, Plaintiff contends that the safety checks on Smith prior to his suicide were not completed and violated his civil rights.

---

[3] While Plaintiff purportedly asserts a separate claim for failure to discipline, "[l]iability for unconstitutionally inadequate supervision or discipline is treated, for all intents and purposes, as a failure to train." *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 943 (M.D. Tenn. 2012). Accordingly, the Court will consider these claims as a singular claim of failure to train.

1. *Failure to Screen*

Based on the evidence, Plaintiff has failed to prove that Hart County failed to screen for suicide risks to its inmates. Her response is largely conclusory with few cites to evidence or legal authority. Nevertheless, she has not shown that the training provided by Hart County to its jail employees was inadequate.

Under Kentucky law, deputy jailers are required to attend annual training, which includes one hour of mental health training.[4] *See* 501 KAR 3:160 Section 4. As noted by Hart County, its jail deputies attended the mandatory annual in-service training within the twelve months prior to Smith's suicide, which included the required mental health training. (Bergenson Dep. 35:5-36:3, Sept. 6, 2017, DN 41-3).

In addition to the required training, Hart County screened inmates—including Smith—for a history of suicide attempts when they were booked into the facility. (Bergenson Dep. 15:5-16,

---

[4] In particular, Kentucky law provides:

> (1) Jail personnel shall receive a minimum of twenty-four (24) hours annual in-service training.
> (2) The training shall include:
> (a) A minimum of four (4) hours of mental health training within the first year of service, and one (1) hour of additional mental health training each year thereafter. The initial four (4) hours of mental health training should be conducted by the service provider of mental health triage or mental health services to the jail, if possible;
> (b) Medical awareness training for jail personnel within the first thirty (30) days of employment; and
> (c) Communicable disease training.
> (3) All Jail personnel or health services staff who administer medications to prisoners shall be trained in the proper procedures as outlined in the jail's policy and procedures manual.
> (4) Jail personnel who are assigned to duties within a direct supervision area or facility shall receive forty (40) hours of pre-service training related to direct supervision. The training shall be approved by the department.

501 KAR 3:160, § 4.

17:6-15). When Smith was booked at the jail, Arnett administered the questionnaire to Smith during which Smith disclosed a prior suicide attempt in 2009. (Arnett Dep. 13:25-15:7, Sept. 6, 2017, DN 42-5). Both Bergenson and Arnett testified that jail employees had been trained to contact Bluegrass Triage for a mental evaluation for any inmates reporting suicide attempts within five years. (Arnett Dep. 15:2-16:23; Bergenson Dep. 18:4-20). While Plaintiff questions the sufficiency of the training, supervision, and discipline relating to the serious medical needs to inmates, the record reflects that Smith was properly screened during the intake process.[5]

Likewise, Plaintiff has failed to prove that any purported inadequacy was the result of Hart County's deliberate indifference regarding the serious medical needs of its jail population. As the Sixth Circuit has explained, "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. This in turn typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures." *Miller v. Calhoun Cty.*, 408 F.3d 803, 815 (6th Cir. 2005) (internal quotation marks omitted) (internal citations omitted) (citation omitted).

"Pre-trial detainees do not have a constitutional right for [municipalities] to ensure, through supervision and discipline, that every possible measure be taken to prevent their suicidal efforts. Detainees have a right that [municipal] policies, training and discipline do not result in deliberate indifference to foreseeable and preventable suicide attempts." *Gray*, 399 F.3d at 619. The record here reflects that Smith's suicide was the only such occurrence during Bergenson's tenure as jailer, and the only other fatality at the Hart County Jail was an inmate who died of alcohol poisoning

---

[5] In opposing the pending motions, Plaintiff does not address the incident which was the catalyst for placing Smith in isolation. By all accounts, Smith engaged in a confrontation with another inmate and intentionally struck his own head on a table. (Bergenson Dep. 20:9-14, Sept. 6, 2017, DN 41-3). Plaintiff has neither argued nor identified any evidence that Smith's behavior indicated suicidal tendencies.

prior to Bergenson's tenure. (Bergenson Dep. 74:5-75:7). Consistent with the Sixth Circuit comment that "[v]ery few cases have upheld municipality liability for the suicide of a pre-trial detainee," Plaintiff has failed to prove deliberate indifference based on this singular suicide at the Hart County Jail. *Gray*, 399 F.3d at 618; *see also id.* at 619 ("Any failure of the city to train or discipline its officers with respect to its policies on preventing suicides by pre-trial detainees did not rise to the level of choosing to ignore obvious risks of foreseeable suicide attempts.").

Finally, Plaintiff has failed to prove any causal connection between any inadequate training and Smith's death. Plaintiff has not pointed to any evidence in the record to satisfy this requirement. Accordingly, Hart County is entitled to summary judgment on the Section 1983 claim.

### 2. *Failure to Perform Safety Checks*

Plaintiff also contends that Hart County violated Smith's constitutional rights by failing to train and supervise deputy jailers in conducting safety checks for inmates in isolation pursuant to jail policy, and in failing to discipline employees who failed to follow the policy. The relevant policy required jail personnel to conduct checks every twenty minutes on inmates in isolation cells. (Bergenson Dep. 39:9-40:11). It is undisputed, however, that the policy was not followed, and that for some period of time before Smith's death, he was not observed in accordance with the written policy.

"*Monell* requires that the pattern or custom of failing to enforce existing policies 'constitute a "custom or usage" with the force of law.'" *Gailor v. Armstong*, 187 F. Supp. 2d 729, 734 (W.D. Ky. 2001). As the Sixth Circuit has explained:

> "A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." For a custom to give rise to *Monell* liability, the custom "must 'be so permanent and well

settled as to constitute a custom or usage with the force of law.'" Such a custom "must include '[d]eeply embedded traditional ways of carrying out state policy.'"

*Miller*, 408 F.3d at 814-15 (internal citations omitted) (citation omitted). To prove a constitutional violation based on a custom, a plaintiff must establish:

(1) the existence of a clear and persistent pattern of mistreatment of detainees;
(2) notice or constructive notice on the part of the County;
(3) the County's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
(4) that the County's custom was the "moving force" or direct causal link in the constitutional deprivation.

*Miller*, 408 F.3d at 815 (citation omitted) (discussing the application of the factors articulated in *Doe v. Claiborne*, 103 F.3d 495 (6th Cir. 1996), to address a claim relating to the treatment of a prisoner).

While Plaintiff does not provide a specific cite to the record on this point, the testimony of Thompson supports the proposition that jail personnel were not following the existing policies on isolation cell checks. Thompson, who had been employed at the jail for fifteen years prior to the suicide, claimed that he had never been told to check inmates in isolation every twenty minutes. (Thompson Dep. 11:6-9, 14:18-15:8). Plaintiff has not shown, however, that there were widespread failures by jail personnel to follow written policies. *See Gailor*, 187 F. Supp. 2d at 735 ("Because Plaintiff has demonstrated that the policies or customs of the Department of Corrections perhaps differed from written policies for only a couple of the claimed policies, the majority of their § 1983 claims fail at this point."). Regardless, the Court will assume without deciding that this proof is sufficient to satisfy the pattern requirement.

By contrast, Plaintiff cannot show that Hart County had notice—either actual or constructive notice—that the relevant policies were not being followed. It was only after Smith's suicide that Bergenson learned that jail personnel were not checking isolation inmates in

11

accordance with jail policy. (Bergenson Dep. 42:11-16). Absent any proof that Hart County had actual or constructive notice, Plaintiff has failed to satisfy this element of her claim.

Plaintiff must also show that the failure to follow the policy or the reliance on the custom for isolation checks constituted a deliberate indifference. Negligence is not sufficient. *See Molton v. City of Cleveland*, 839 F.2d 240, 246 (6th Cir. 1988); *see also id.* at 243 ("The conduct for which liability attaches must be more than negligence." (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). Rather, "[d]eliberate indifference is akin to criminal recklessness." . . . "[I]t is a very high standard of culpability, exceeding gross negligence." *Jones v. Muskegon Cty.*, 625 F.3d 935, 947 (6th Cir. 2010) (internal citation omitted) (citation omitted).

While Plaintiff focuses on the failure to jail personnel to follow certain policies, the failure to adhere to jail policies does not necessarily equate to a constitutional violation. *See Crocker*, 119 F. App'x at 725 (citing *Roberts v. City of Troy*, 773 F.2d 720, 725 (6th Cir. 1985)); *Ernst v. Creek Cty. Pub. Facilities Auth.*, No. 14-CV-504-GKF-PJC, 2016 WL 4442803, at *9 (N.D. Okla. Aug. 22, 2016), *aff'd*, 697 F. App'x 931 (10th Cir. 2017) (citation omitted). Plaintiff notes that "[t]he paper log in this matter shows that in the approximately 2 and ½ hours prior to the discovery of Mr. Smith's death, deputies failed to check on Mr. Smith a single time." (Pl.'s Resp. Defs.' Mots. Summ. J. 5). Even if that it is true, Plaintiff has not cited any authority to support the conclusion that the failure to conduct checks during that 2½-hour period in violation of jail policy constituted deliberate indifference. Likewise, it is uncontested that Smith's suicide was the first such tragedy at the Hart County Jail.

As noted above, municipalities are generally not liable for the suicide of pretrial detainees, and there is no proof here that Hart County ignored "obvious risks of suicide that are foreseeable." *Lawrence v. Madison Cty.*, 176 F. Supp. 3d 650, 673 (E.D. Ky. 2016) (quoting *Gray*, 399 F.3d at

618); *see also Alcorn v. Scott Cty. Detention Ctr.*, No. 09-232-JBC, 2011 WL 2145287, at *11 (E.D. Ky. May 31, 2011) ("There was not a pattern of such suicides to put them on notice; nor were there other warning signs that a problem might occur. The only other suicide discussed by the parties occurred years before, and involved an inmate who *was* cut down. Hence, there is no indication that anyone was aware of the risks presented by this particular policy. Such a lack of awareness might amount to negligence, but it falls far short of deliberate indifference."). In the present case, Mabe is the putative culprit. He specifically testified, however, that he was familiar with Smith and noticed nothing amiss when he spoke with Smith just hours before the suicide. (Mabe Dep. 25:19-27:24). Absent some contrary evidence, none of which is cited by Plaintiff, the record simply does not support a claim for deliberate indifference. Accordingly, absent proof that Smith's suicide was foreseeable, Plaintiff has failed to satisfy this element of her claim.

Finally, Plaintiff must prove that the wrongful conduct of Hart County was the proximate cause of Smith's suicide. *See Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994) ("That is, a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury."). "Generally, a decedent's suicide is considered an unforeseeable intervening act between the defendants' conduct and the decedent's death." *Estate of Brouhard ex rel. Brouhard v. Vill. of Oxford*, 990 F. Supp. 839, 842 (E.D. Mich. 1997) (citations omitted). Other than Plaintiff's bare allegations, she has not shown a causal link. Even if the policies had been followed, Smith could have still committed suicide between the twenty-minute checks. Absent some other evidence or authority to the contrary, the Court concludes that Plaintiff has failed to meet her burden, and this claim will be dismissed.

13

### B. State Law Claims

Each Defendant has also moved for summary judgment on Plaintiff's remaining state law claims. (Bergenson & Hart Cty. Mot. 22-28; Mabe Mot. 9-22; Thompson Mot. 15-23). The parties apparently agree, however, that if the Court dismisses Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over her remaining state law claims. (Bergenson & Hart Cty. Mot. 22 n.3; Pl.'s Resp. 28). The Court agrees that the interests of judicial economy and the avoidance of multiplicity of litigation does not outweigh the general concern over needlessly deciding state law issues and will therefore dismiss Plaintiff's state law claims without prejudice. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521-22 (6th Cir. 2007); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motions for Summary Judgment (DN 41, 42, 43) are **GRANTED**.

2. Counts I, II, III, VII of the Complaint are **DISMISSED WITH PREJUDICE**.

3. Counts IV, V, and VI of the Complaint are **DISMISSED WITHOUT PREJUDICE** only with respect to the state-law claims asserted therein.

4. This matter is **STRICKEN** from the Court's active docket.

Greg N. Stivers, Judge
United States District Court
September 28, 2018

cc: counsel of record